**SO ORDERED.**

**SIGNED this 14 day of June, 2024.**



_____
**David M. Warren**
**United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                   CASE NO. 23-02532-5-DMW

**BOBBY EUGENE GODDARD, JR.**
                                                      CHAPTER 13
          **DEBTOR**

**MEMORANDUM OPINION AND ORDER
DENYING CONFIRMATION OF CHAPTER 13 PLAN**

This matter comes on to be heard upon the Chapter 13 Plan ("Plan") filed by Bobby Eugene Goddard, Jr. ("Debtor") on January 4, 2024, the Trustee's Objection to Confirmation of Plan filed by Michael B. Burnett, Esq. ("Trustee"), Chapter 13 trustee, on February 12, 2024 and the Debtor's Memorandum in Support of Confirmation filed by the Debtor on March 12, 2024. The court conducted a hearing in Raleigh, North Carolina on March 19, 2024. Travis Sasser, Esq. appeared for the Debtor, and the Trustee appeared *pro se*. Based upon the pleadings, the arguments of counsel, the evidence presented, including the testimony of the Debtor, and the case record, the court makes the following findings of fact and conclusions of law:

Background

1.      The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on September 1, 2023. The Trustee is serving as Chapter 13 trustee to fulfill the duties as provided in 11 U.S.C. § 1302.

2.      The Debtor resides in Garner, North Carolina with his spouse ("Spouse") and his mother-in-law. The Debtor served in the United States Army for 25 years on multiple deployments involving active combat. The Debtor suffers from chronic post-traumatic stress disorder and is under the care of a psychologist and a psychiatrist at the United States Department of Veterans Affairs ("VA").

3.      The Debtor retired from the Army in 2012 and is employed currently by the Department of Labor as a Veteran Employment Specialist earning a gross monthly salary of $7,167.33. The Debtor also receives retirement income of $2,748.00 and VA Disability income of $2,353.39 each month, for total net monthly income of $9,589.34 after accounting for various payroll deductions. The Spouse earns net monthly income of $2,285.40.

4.      The Debtor owns three vehicles: a 2015 Chevrolet Corvette ("Chevrolet"), a 2021 GMC Sierra 1500 Crew Cab SLT ("GMC") and a 2022 Genesis G70 ("Genesis") (collectively, "Vehicles"). The Debtor financed the purchase of both the Chevrolet and the GMC in January 2021 for $45,692.00 and $61,805.85, respectively. He financed the purchase of the Genesis in February 2022 for $57,716.18.[1] The Vehicles are encumbered by liens securing debts that had a total balance of $137,606.64 on the petition date. The Spouse owns an unencumbered 2015 Nissan Altima ("Nissan").

5.      The Debtor is an above-median income debtor. He filed Official Form 122C-2, Chapter 13 Calculation of Your Disposable Income, to calculate his disposable income that must

---

[1] The stated purchase prices do not include sales tax amounts.

be paid to unsecured creditors pursuant to 11 U.S.C. § 1325(b)(1)(B). On that form, sometimes referred to as the Chapter 13 "means test," the Debtor deducted from his current monthly income (as defined in 11 U.S.C. § 101(10A)) his average monthly payments for the debts secured by the Vehicles. Accounting for those deductions, the Debtor calculated that his monthly disposable income is negative $233.98. The Trustee does not challenge the Debtor's entitlement under § 1325(b) to claim the deductions related to the Vehicles or his calculation that he has no monthly disposable income.[2]

6. Although the Debtor is not required to pay a dividend to unsecured creditors pursuant the "disposable income test" of § 1325(b)(1)(B), the Trustee estimates that general unsecured creditors, whose claims total $84,700.19, would receive a dividend of approximately 7.7 percent of their claims under the Plan.[3]

7. The Debtor proposes to satisfy the claims secured by the Vehicles with payments through the Trustee, to be paid over 60 months at 10.5 percent interest. The Trustee estimates that he would need to disburse $727.89, $963.17 and $1,266.64 to the Chevrolet, GMC and Genesis lienholders, respectively, to pay those claims in full. In total, if the court were to confirm the Plan, the Trustee would disburse $2,957.70 each month toward claims related to the Vehicles.

8. The Debtor testified about his and his Spouse's various transportation needs and the uses of the Vehicles. The Debtor works a hybrid schedule, working from his residence certain days and working in the office on other days. The Debtor's place of employment is

---

[2] Although the Trustee questions the accuracy of certain deductions on the Debtor's Chapter 13 means test, the Trustee agrees that even if his own calculations were used, the result would remain the same.

[3] The court previously denied confirmation of a Chapter 13 plan filed by the Debtor that also proposed to retain the Vehicles. That plan would have required two monthly payments of $3,070.00, followed by 58 monthly payments of $3,590.00, for a total of $214,360.00 paid to the Trustee. In the Plan before the court, the Debtor proposes two monthly payments of $3,070.00, followed by 58 monthly payments of $3,700.00, for a total of $220,740.00 paid to the Trustee. The increase to the proposed payment amount is the primary source of the dividend that would go to general unsecured creditors if the court confirmed the Plan.

approximately nine miles from his residence. He testified that he drives the Chevrolet daily, except in inclement weather, although the Debtor also characterized the GMC as his "everyday driver." The Debtor uses the GMC for yard maintenance tasks and whenever he needs to move items using the bed of the truck. He considers driving the Chevrolet to be a "stress reliever" to combat his post-traumatic stress disorder.

9. The Spouse works certain days in nearby Raleigh, North Carolina and other days in neighboring Durham, North Carolina. The Debtor considers the Nissan unreliable to be driven long distances, and when the Spouse commutes to work in Durham, she drives the Genesis. The Debtor's mother lives in Plymouth, North Carolina, and the Debtor uses the Genesis to transport her to and from appointments in the Raleigh area at least four times a year. The Debtor and his Spouse enjoy using their vehicles to travel when they are not working, and the Debtor considers these trips beneficial to his marriage.

10. The Debtor also testified about his financial circumstances prior to filing his bankruptcy petition. The Debtor loaned money to family members and never received repayment. He incurred personal loans and credit card debt. According to proofs of claim filed by Upstart Network, Inc., between December 8, 2021 and November 30, 2022, the Debtor incurred four separate personal loans that had a total balance of $35,833.70 when the Debtor filed his petition. The Debtor incurred one of the four personal loans the day before purchasing the Genesis.

11. The Trustee asserts that confirmation of the Plan should be denied, because the Plan does not satisfy the requirement of 11 U.S.C. § 1325(a)(3) that a Chapter 13 plan be proposed in good faith. Specifically, the Trustee cites the Debtor's proposed retention of the Vehicles, asserting that the Debtor's needs and the nature of his employment do not appear to be

4

dependent on retention of all three Vehicles. Although the Trustee does not challenge the Debtor's entitlement to claim the deductions related to the Vehicles on the means test, he notes that the proposed retention of the Vehicles affects the result of the means test and the calculation of the Debtor's disposable monthly income. If the Debtor were to surrender any one of the Vehicles, then he would have disposable income to pay a higher dividend to his general unsecured creditors. Similarly, if the Debtor retains all three Vehicles, that retention will be at the expense of the Debtor's general unsecured creditors, and under the circumstances of this case, the Trustee considers the proposed retention of the Vehicles to be indicative of bad faith.

12.     The Debtor asserts that the good faith analysis of § 1325(a)(3) should not be invoked to challenge a debtor's retention of assets for which expenses are a permitted deduction on the Chapter 13 means test. The Debtor also disputes the characterization made by the Trustee regarding his good faith in proposing the Plan, and he argues that the Plan satisfies the good faith inquiry implemented by the Fourth Circuit Court of Appeals.

<u>Analysis</u>

13.     In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), implementing significant changes to the way Chapter 13 debtors calculate their disposable income, including application of the means test completed by the Debtor in this case. BAPCPA left unaltered the good faith requirement of § 1325(a)(3). The court must determine whether the Debtor, although he is contributing all of his disposable income as calculated pursuant to § 1325(b), may still be found to have proposed the Plan in bad faith because he seeks to retain the Vehicles to the detriment of his unsecured creditors. The court must decide whether § 1325(a)(3) remains a viable element of confirmation, exclusive

from a debtor's compliance with the formulaic calculation of disposable income under § 1325(b)(2).

14. In 2013, the Ninth Circuit Court of Appeals examined whether, in determining if the debtors "proposed their plan in good faith, the bankruptcy court should have considered the [debtors'] payments to secured creditors with respect to "luxury" items." *In re Welsh*, 711 F.3d 1120, 1133 (9th Cir. 2013). The *Welsh* court concluded that "Congress's adoption of the BAPCPA forecloses a court's consideration of . . . a debtor's payments to secured creditors as part of the inquiry into good faith under 11 U.S.C. § 1325(a)." *Id.* at 1135. A former judge in this district came to a similar conclusion in 2006, finding that "[s]o long as the debtor calculates the projected disposable income with specific reference to the new definition of disposable income and commits that projected disposable income to pay unsecured creditors for the applicable commitment period, [the debtor] is in good faith compliance with the Code." *In re Alexander*, 344 B.R. 742, 752 (Bankr. E.D.N.C. 2006) (citing 11 U.S.C. § 1325(b)(1)(B)). That incomplete analysis and erroneous conclusion, made in the early days of BAPCPA, completely ignores 11 U.S.C. § 1325(a)(3) which is still alive and well.

15. Other courts have come to the opposite, more realistic, and more accurate conclusion. In 2019, Judge Peter G. Cary, United States Bankruptcy Court for the District of Maine, held that –

> §§ 1325(a)(3) and 1325(b) have different purposes and, therefore, a debtor contributing all of his or her disposable income under § 1325(b) may still be found to have proposed his or her plan in bad faith if, when viewed in the context of the facts of a particular case, the retention of a luxury item suggests that the debtor is not making an honest effort to repay his or her creditors.

*In re Broder*, 607 B.R. 774, 778 (Bankr. D. Me. 2019). Similarly, the United States Bankruptcy Court for the District of Colorado determined that "§ 1325(a)(3) allows for a more subjective

6

analysis of a debtor's good faith and the totality of the circumstances, even where the debtor has met the mechanical requirements of § 1325(b)." *In re Williams*, 394 B.R. 550, 572 (Bankr. D. Colo. 2008).

16. The question before the court has not been decided by the Fourth Circuit Court of Appeals. The Debtor cites a footnote from a 2013 case in which the Fourth Circuit quoted the following sentence from a Tenth Circuit case: "When a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes [Social Security income], that exclusion cannot constitute a lack of good faith." *Mort Ranta v. Gorman*, 721 F.3d 241, 253 n.15 (4th Cir. 2013) (quoting *In re Cranmer*, 697 F.3d 1314, 1319 (10th Cir. 2012)). As that case involved the question whether Social Security income must be included in the calculation of a below-median income debtor's disposable income, the court does not consider the footnote dispositive of the issue at hand.

17. The Fourth Circuit addressed recently whether above-median income debtors are entitled to deduct the actual cost of mortgage payments when completing the means test. In that case, the court, citing *Welsh*, joined "the Sixth and Ninth Circuits in holding the Chapter 13 means test permits above-median income debtors to deduct the actual costs of their mortgage payments when calculating their disposable income." *Bledsoe v. Cook*, 70 F.4th 746, 748 (4th Cir. 2023) (citing *Welsh*, 711 F.3d at 1130). Quoting *Welsh* in conclusion, the Fourth Circuit held that "[b]ecause 'Congress made a conscious effort to cabin the discretion of bankruptcy judges' by removing the power to determine 'what is or is not "reasonably necessary,"' we decline to interpret the statute to restore the very power Congress removed." *Bledsoe v. Cook*, 70 F.4th at 751 (quoting *Welsh*, 711 F.3d at 1131, 1134).

18. The matter of *Bledsoe v. Cook* did not involve questions of the debtors' good faith in proposing their Chapter 13 plan. Although the Fourth Circuit quoted and joined the *Welsh* court in its holding, and although the *Welsh* case included analysis of the good faith requirement of § 1325(a)(3), this court does not find *Bledsoe v. Cook* to be dispositive of the issue before the court. *Bledsoe v. Cook* addressed only a debtor's entitlement to deductions on the means test, and its favorable treatment of *Welsh* did not somehow incorporate *Welsh*'s holding as to good faith into Fourth Circuit precedent.

19. On the issue of good faith and whether the court may consider a debtor's payments to secured creditors, the court disagrees with the Ninth Circuit's conclusion and instead finds persuasive the reasoning of the *Broder* and *Williams* courts cited above. Under the view of courts like the Ninth Circuit, "technical compliance with the provisions of § 1325(b) precludes a finding of bad faith or, in other words, creates a safe harbor for debtors." *Williams*, 394 B.R. at 571. The court is unable to reconcile this viewpoint with Congress' retention of § 1325(a)(3) when it implemented BAPCPA. The retention of § 1325(a)(3) instead signifies an intent to maintain the good faith inquiry separate and distinct from the means test and disposable income inquiry. The confirmation process cannot be purely robotic as the Debtor would like, because the court must still evaluate and determine, pursuant to § 1325(a)(3), whether the Plan has been proposed in good faith.

20. In evaluating good faith, the Fourth Circuit Court of Appeals has found the "generally accepted definition of 'good faith' as used in Chapter 11 of the old Bankruptcy Act" to be instructive. *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982) (referencing 11 U.S.C. § 766(4) (1976) (repealed)). "[T]he basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the

Chapter] in the proposal or plan." *Id.* (quoting 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978)). "Congress never intended, of course, that Chapter 13 serve as a haven for debtors who wish to receive a discharge of unsecured debts without making an honest effort to pay those debts." *Id.*

> Factors to be considered include, but are not limited to, the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor.

*Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986) (citing *Deans v. O'Donnell*, 692 F.2d at 972).

21.     Although the Plan includes a meager projected dividend to general unsecured creditors when no dividend is required under the disposable income test, the Debtor's minimal voluntary contribution does not overcome the aspects of the Plan regarding the Vehicles. The Debtor's testimony did not establish any necessity for all three Vehicles. If the Debtor had his way, the Trustee would disburse nearly $3,000.00 each month toward claims secured by vehicles that adorn the Debtor's driveway and allow for luxuries at the expense of his creditors. The Debtor's alleged therapeutic use of the Chevrolet might rationalize the retention of that vehicle, but the Debtor's testimony did not support the practical need for both the GMC and the Genesis in addition to the Chevrolet.

22.     The proposed retention of the Vehicles suggests that rather than making a good faith effort to rehabilitate his financial circumstances, the Debtor is seeking to improve his financial condition at the expense of his unsecured creditors. Under the terms of the Plan, the Debtor would emerge from bankruptcy with three unencumbered vehicles and the discharge of over $78,000.00 in unsecured debt. The Debtor conceded that he "probably could have"

9

remained current on his unsecured debt obligations pre-petition if he had reduced his obligations related to the Vehicles. Based on the timing of the Debtor's personal loans, it appears that during the 21 months prior to filing his petition, the Debtor may have serviced the debts related to the Vehicles with the very loans he now seeks to discharge. Compliance with 11 U.S.C. § 1325(b)(1)(B) cannot and should not provide cover for such financial indiscretions.

23. Under the circumstances of this case, the court is unable to find that the Debtor has proposed the Plan in good faith as required by § 1325(a)(3), and confirmation of the Plan should be denied; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. Confirmation of the Plan be, and hereby is, denied; and

2. The Debtor shall have 30 days from the date of this Order to file an amended Chapter 13 Plan.

END OF DOCUMENT