**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――――――

**No. 25-1303**

―――――――――――――

BOBBY EUGENE GODDARD,

                Debtor - Appellant,

     v.

MICHAEL BRANDON BURNETT,

                Trustee - Appellee.

-----------------------------------------------------------

NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS;
NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER,

                Amici Supporting Appellant.

―――――――――――――

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:24-cv-00368-D)

―――――――――――――

Argued:  December 10, 2025　　　　　　　　　　　Decided:  April 28, 2026

―――――――――――――

Before NIEMEYER, THACKER, and BERNER, Circuit Judges.

―――――――――――――

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Thacker and Judge Berner joined.

―――――――――――――

**ARGUED:** Travis P. Sasser, SASSER LAW FIRM, Cary, North Carolina, for Appellant. Michael Brandon Burnett, OFFICE OF THE CHAPTER 13 TRUSTEE, Raleigh, North Carolina, for Appellee. Richard Preston Cook, RICHARD P. COOK, PLLC, Wilmington, North Carolina, for Amici Curiae. **ON BRIEF:** Benjamin E. Lovell, OFFICE OF THE CHAPTER 13 TRUSTEE, Raleigh, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

Bobby Goddard, Jr., a debtor in a Chapter 13 bankruptcy proceeding, proposed a plan by which the Trustee would pay off loans on his three luxury vehicles but would pay unsecured creditors less than 8 cents on the dollar, thus leaving Goddard at the end of the proceeding with ownership of the vehicles and a discharge of most of his unsecured debt. Although his plan's treatment of the unsecured creditors complied technically with § 1325(b) of the Bankruptcy Code, the bankruptcy court rejected the plan on the ground that it was not proposed "in good faith," as required by § 1325(a)(3). *See* 11 U.S.C. § 1325(a)(3), (b). The court concluded that Goddard's plan was designed to enable him to retain luxuries at the expense of unsecured creditors, such that, in proposing it, Goddard was not making an honest effort to repay his creditors.

Contending that his compliance with § 1325(b) required the bankruptcy court to accept his plan, Goddard appealed to the district court. The district court, however, ruled that the bankruptcy court had "properly construed 11 U.S.C. § 1325 and permissibly rejected Goddard's Chapter 13 Plan . . . in which Goddard sought to retain three luxury vehicles at the expense of his creditors."

Because we conclude that compliance with § 1325(b) did not immunize Goddard's plan from the good-faith requirement of § 1325(a) and that the bankruptcy court permissibly reviewed Goddard's plan for good-faith compliance with the Bankruptcy Code and its purposes, we affirm the judgment of the district court, which affirmed the order of the bankruptcy court rejecting Goddard's plan.

I

In September 2023, Bobby Goddard, Jr., a resident of Garner, North Carolina, filed a Chapter 13 petition in bankruptcy, and Michael B. Burnett was appointed to serve as Trustee. Goddard's wife, who lived with him, did not file for bankruptcy.

At the time Goddard filed his petition, he was earning $7,167 per month from his employment with the Department of Labor, where he was working as a Veteran Employee Specialist. He was also receiving $2,748 per month as retirement income from the U.S. Army and $2,353 in disability benefits from the Department of Veterans Affairs. His gross income was thus $12,268 per month, and his take home income was $9,589. In addition, Goddard's wife earned $4,189 per month, taking home $2,285. Goddard's income placed him in the above-the-median income status for purposes of Chapter 13.

When he filed his petition, Goddard owned three luxury vehicles, which he had purchased during the 32 months prior to filing his petition — a 2015 Chevrolet Corvette, on which he owed $33,865 and was paying $839 per month; a 2021 GMC Sierra 1500, on which he owed $44,811 and was paying $1,080 per month; and a 2022 Genesis G70, on which he owed $58,930 and was paying $1,141 per month. Thus, his monthly payments on the three vehicles totaled roughly $3,060.

In addition, Goddard also had about $84,700 in general unsecured debt, more than $35,000 of which was attributable to four personal loans he took out between December 2021 and November 2022 — that is, around the time he purchased the three luxury vehicles. Indeed, Goddard took out one of the loans the day before he purchased the 2022 Genesis G70.

4

Because Goddard was an "above-median income debtor" for purposes of Chapter 13 of the Bankruptcy Code, he qualified for the use of a statutory formula known as the "means test" to calculate his "disposable income," all of which, should an objection be made, had to be used to pay unsecured creditors under his Chapter 13 plan. *See* 11 U.S.C. § 1325(b)(1)(B). To calculate disposable income under this means test, Chapter 13 debtors are required to complete Official Form 122C-2, which directs debtors to add up certain allowable monthly expenses and then subtract that total from their current monthly income. Consistent with the Code, the form calls for debtors to use national and local standards to calculate the amounts that can be deducted from income for certain types of expenses, such as food, clothing, and utilities. It also specifies that amounts owed for secured debt can be deducted in full from the debtor's income. *See id.* §§ 1325(b)(2)–(3), 707(b)(2)(A)(iii).

Thus, when calculating his disposable income, Goddard was permitted to deduct from his monthly income his average monthly mortgage payment of $2,543, as well as the *average* monthly payments on his three car loans, which he recorded on Official Form 122C-2 as $625 per month for the 2015 Corvette, $756 per month for the 2021 GMC truck, and $1,140 per month for the 2022 Genesis, for a total of $2,521 per month in car loan payments. When these amounts for the payment of secured debt, together with the other allowable expenses, were deducted from his monthly income, the result was a *negative* $234. Thus, Goddard reported that he had no disposable income to pay unsecured creditors.

After making these calculations, Goddard proposed three Chapter 13 plans for confirmation, amending the original plan twice before the bankruptcy court rejected his

third plan. In his fourth plan, which is at issue in this appeal, he proposed a 60-month payment period, during which he would pay directly the amount owed on his mortgage and pay the Trustee $3,070 per month for two months and then $3,700 per month thereafter for other debts. From those sums, the Trustee would pay $2,958 per month to the creditors on the three vehicle loans and then several miscellaneous priority expenses, including a small pre-petition mortgage arrearage, a claim secured by a lawnmower, a priority unsecured claim owed to the IRS, Goddard's base attorneys fees and reimbursement, and Trustee fees. The Trustee would then pay what was left to the general unsecured creditors, whose allowed claims totaled $84,700. The Trustee calculated that over the period of the five-year plan, he would only be able to pay the unsecured creditors roughly $6,500, or 7.7% of their claims.

In short, under Goddard's proposed plan, after 60 months, the secured loans on all Goddard's vehicles would be paid off, giving Goddard unencumbered ownership of the three vehicles, but only 7.7% of the unsecured debt would be paid. The remainder of his unsecured debt — a total of more than $78,000 — would be discharged.

The Trustee objected to Goddard's proposed Chapter 13 plan, arguing that because it provided for such a small disbursement to his general unsecured creditors while permitting him to retain three recently purchased luxury vehicles, the plan had not "been proposed in good faith," within the meaning of § 1325(a)(3), and therefore that the bankruptcy court should deny confirmation. Goddard argued in response, however — as summarized by the bankruptcy court — that "the good faith analysis of § 1325(a)(3) should

6

not be invoked to challenge a debtor's retention of assets for which expenses are a permitted deduction on the Chapter 13 means test" under § 1325(b).

Following a hearing, the bankruptcy court agreed with the Trustee. In its memorandum opinion dated June 14, 2024, the court explained that the Trustee was not challenging Goddard's "entitlement under § 1325(b) to claim the deductions related to the [v]ehicles" on the means test or his "calculation that he ha[d] no monthly disposable income" for payment of unsecured creditors, as those calculations complied with "the 'disposable income test' of § 1325(b)(1)(B)." Nonetheless, the court explained that when Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005, it "left unaltered the good faith requirement of § 1325(a)(3)," "signif[ying] an intent to maintain the good faith inquiry separate and distinct from the means test and disposable income inquiry." Thus, the court concluded that a debtor's "technical compliance" with § 1325(b) did not, as a matter of law, obviate the court's obligation to "evaluate and determine, pursuant to § 1325(a)(3), whether the Plan ha[d] been proposed in good faith." And the court understood the good-faith inquiry to be "whether or not under the circumstances of the case there ha[d] been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan." (Quoting *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982)). The court concluded that even where a debtor proposed contributing all of his disposable income to unsecured creditors, as required by § 1325(b), the plan could still have been proposed "in bad faith if, when viewed in the context of the facts of a particular case, the retention of a luxury item suggest[ed] that the debtor [was] not making an honest effort to repay his or her creditors." (Quoting

7

*In re Broder*, 607 B.R. 774, 778 (Bankr. D. Me. 2019)). And applying that principle to the facts of Goddard's case, the bankruptcy court found that Goddard's proposal to retain three luxury vehicles while paying only "a meager projected dividend to general unsecured creditors" would amount to an abuse of Chapter 13. The court explained that Goddard "did not support the practical need" for retaining the three vehicles and that, instead, his plan was an effort "to improve his financial condition at the expense of his unsecured creditors." It noted that "[u]nder the terms of the Plan, [Goddard] would emerge from bankruptcy with three unencumbered vehicles and the discharge of over $78,000 in unsecured debt." Thus, in the circumstances presented, the court denied Goddard's request to confirm his Chapter 13 plan.

Goddard filed a motion with the district court for leave to file an interlocutory appeal, which the district court granted. The district court then affirmed the bankruptcy court's order in a memorandum opinion dated March 13, 2025. It concluded that the bankruptcy court had "properly construed 11 U.S.C. § 1325 and permissibly rejected Goddard's Chapter 13 Plan . . . in which Goddard sought to retain three luxury vehicles at the expense of his creditors" as not having been proposed in good faith.

From the district court's judgment dated March 13, 2025, affirming the order of the bankruptcy court, Goddard filed this appeal. We have jurisdiction under 28 U.S.C. § 158(d)(1). *See Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013).

II

Goddard contends that the bankruptcy court erred in denying confirmation of his Chapter 13 plan "based on a lack of good faith under § 1325(a)(3)," arguing that it was "an inappropriate application of § 1325(a)(3) where the plan complied with the disposable income requirement of § 1325(b)." He maintains that his retention of the vehicles and minimum payment to unsecured creditors were matters "exclusively governed by the disposable income calculations of § 1325(b)" and therefore that, since he fully complied with § 1325(b), the bankruptcy court "abused its discretion and erred as a matter of law by denying confirmation of the plan." In essence, he maintains that his compliance with § 1325(b) immunized him from the bankruptcy court's consideration of whether he filed his plan in good faith under § 1325(a)(3).

Explaining the rationale for his argument, Goddard points out that, prior to 2005, Chapter 13 debtors were required to devote all their "disposable income" to paying unsecured creditors, but what constituted "disposable income" was determined on a case-by-case basis, giving bankruptcy courts *discretion* over whether expenses were "reasonably necessary" for the support of the debtor. But with the 2005 changes made by BAPCPA, Congress removed that discretion from the determination of whether a debtor's expenses were reasonably necessary and provided "a bright-line statutory test for debtors . . . whose income was above the median." He thus argues that "under BAPCPA's means test, bankruptcy judges *no longer have discretion* to determine which expenses . . . are reasonably necessary." (Emphasis added). And it follows, he contends, that a bankruptcy court cannot find a lack of good faith based on the debtor's decision to retain certain assets,

9

however luxurious they might seem, when the payments for those assets are deemed to be "reasonably necessary" under § 1325(b). He thus concludes that once it is determined that he complied with the terms of § 1325(b), his plan's proposed treatment of assets serving as collateral for several loans and its minimal payment to unsecured creditors cannot, as a matter of law, support a finding under § 1325(a)(3) that his plan was not proposed in good faith.

We conclude that this argument falls short for several reasons.

*First*, Goddard's logic is flawed. He argues that because *discretion* was removed from the provision calculating disposable income with the means test, the need to consider *good faith* was effectively eliminated. To be sure, when BAPCPA's means test applies, bankruptcy courts no longer assess, on a case-by-case basis, which of the debtor's claimed expenses are reasonable. *See Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 65 (2011). But taking away that discretion does not ensure that all plans that comply with § 1325(b) were filed in good faith. And it simply does not follow that eliminating discretion in the means-test calculation thereby eliminated the need for a good-faith assessment of a Chapter 13 plan. The scope of the good-faith requirement is much broader than simply reviewing the means-test calculation.

*Second* and similarly, Goddard construes the good-faith requirement far too narrowly. Its scope is much broader both in geography and in its elements. Foundationally, the entire bankruptcy process is "an equitable procedure that is available to those who employ its benefits in good faith." *Herlihy v. DBMP, LLC*, 167 F.4th 142, 151 (4th Cir. 2026). Such debtors are given the opportunity for a fresh start through the discharge of

what can be a considerable amount of debt, while the interests of secured and unsecured creditors are managed as equitably as possible. Thus, "[w]hen a debtor manipulates the bankruptcy procedure for some other purpose or steps outside the equitable limitations of the Bankruptcy Code, his good faith comes into question, placing in doubt any relief he seeks in bankruptcy." *Id.* Consistent with this, "the requirement of good faith permeates the entire Bankruptcy Code." *Id.* (citing, among other sources, *In re Premier Auto. Servs.*, 492 F.3d 274, 279 (4th Cir. 2007), and *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989)).

Moreover, the requirement of good faith is explicitly imposed by the text of the Bankruptcy Code in various chapters, including, as relevant here, for all plans filed under Chapter 13. *See* 11 U.S.C. §§ 1321, 1325(a)(3). Specifically, § 1325(a)(3) provides that the court shall confirm the debtor's plan if, among other requirements, it "has been proposed in good faith and not by any means forbidden by law." Thus, a bankruptcy court is required to find that the debtor has proposed the Chapter 13 plan in good faith before it may confirm it.

*Third*, the concept of good faith is not fulfilled simply through technical compliance with the Bankruptcy Code's provisions. We have long recognized that "the basic inquiry" when assessing whether a plan has been proposed in good faith is "whether or not under the circumstances of the case there has been *an abuse* of the provisions, purpose, or spirit of the Chapter in the proposal or plan." *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982) (emphasis added) (cleaned up). Thus, while compliance with the Bankruptcy Code's provisions may be required to show good faith, good faith reaches beyond mere compliance

11

to assess whether a proposed plan, even if in technical compliance, would nonetheless abuse the provision's purposes or violate the spirit of Chapter 13 or the Bankruptcy Code more broadly. For instance, in discussing the good-faith requirement, we have observed that "Congress never intended . . . [for] Chapter 13 [to] serve as a haven for debtors who wish to receive a discharge of unsecured debts *without making an honest effort to pay those debts*." *Id.* (emphasis added). That inquiry is far broader than simply determining whether a debtor complies with the text of a provision, such as § 1325(b).

*Fourth*, as a matter of statutory interpretation, BAPCPA did not eliminate the requirement that a Chapter 13 plan be proposed in good faith. Rather, the 2005 Act was enacted to confirm a good-faith filing — "to help ensure that debtors who *can* pay creditors *do* pay them." *Ransom*, 562 U.S. at 64. The good-faith requirement was thus deliberately left in Chapter 13 — despite the elimination of discretion within the means-test provision — as an equitable overlay to preclude, among other things, plans that would serve as a "haven for debtors . . . to receive a discharge of unsecured debts without making an honest effort to pay those debts." *Deans*, 692 F.2d at 972; 11 U.S.C. § 1325(a)(3).

*Fifth*, and again as a matter of statutory interpretation, § 1325(a)(1) requires *every* Chapter 13 plan to comply with *all the provisions* of Chapter 13, not only § 1325(b)'s disposable income requirement. *See* 11 U.S.C. § 1325(a)(1) (making "compli[ance] with the provisions of this chapter and with the other applicable provisions of this title" a separate, additional requirement for plan confirmation). This further rebuts any argument that a plan's compliance with § 1325(b) precludes a finding that its proposal was not in good faith under § 1325(a)(3).

12

*Sixth* and finally, the structure of the means test itself demonstrates that good faith remains a separate, independent requirement. Specifically, § 1325(b)(3) does not state categorically that the deductions permitted under § 707(b)(2) are to be *deemed* "reasonably necessary" expenses *for all purposes*. Rather, the means test is a tool used to determine the debtor's "disposable income" "*[f]or purposes of this subsection*" — *i.e.*, for purposes of applying § 1325(b), rather than all of § 1325. 11 U.S.C. § 1325(b)(2) (emphasis added). Thus, by its own terms, the fact that § 1325(b)(3) treats all of the debtor's monthly secured debt payments as part of the "[a]mounts reasonably necessary to be expended" when calculating disposable income under § 1325(b) does *not* mean that bankruptcy courts may not question the debtor's decision to retain assets serving as collateral for those secured loans when assessing, under § 1325(a)(3), whether the plan has been proposed in good faith.

This conclusion finds support also in the broader structure of § 707(b), from which § 1325(b) borrows the means test. Specifically, § 707(b)(1) authorizes bankruptcy courts to dismiss a Chapter 7 case or, with the debtor's consent, convert it to one under Chapter 11 or Chapter 13 "if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). Section 707(b)(2)(A) then provides that "the court *shall presume abuse exists*" based on application of a mechanical test, *id.* § 707(b)(2)(A)(i) (emphasis added), while subparagraph (B) of § 707(b)(2) specifies how that "presumption of abuse may . . . be rebutted," *id.* § 707(b)(2)(B)(i). Both provisions then work in tandem with § 707(b)(3), which provides that when "considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter," either "in a case in

13

which the presumption [of abuse] does not arise" or where that presumption "is rebutted," the bankruptcy court "shall consider" "whether the debtor filed the petition in bad faith" or *whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." Id.* § 707(b)(3) (emphasis added). Accordingly, the fact that the means test of § 707(b)(2) operates in tandem with the broad, holistic test specified in § 707(b)(3) dramatically undercuts Goddard's argument that by incorporating the means-test portion of § 707(b)(2) into § 1325(b), Congress limited the factors that bankruptcy courts may consider when assessing, under § 1325(a)(3), whether the plan has been proposed in good faith. Rather, just as the precise formula in § 707(b)(2) and the broader, equitable analysis in § 707(b)(3) complement each other, so too do § 1325(b) and § 1325(a)(3).

For all these reasons, we reject the legal notion that strict compliance with § 1325(b) somehow precludes the bankruptcy court from considering whether the debtor's Chapter 13 plan was proposed in good faith, as required by § 1325(a)(3). Instead, bankruptcy courts remain charged with considering, under *all the circumstances,* whether the debtor's proposed plan would amount to "an abuse of the provisions, purpose, or spirit of the Chapter." *Deans*, 692 F.2d at 972 (cleaned up).

By contrast, under Goddard's reading of the Bankruptcy Code, a debtor could, for example, devise a scheme to buy a $100,000 painting for one-third of the price, sticking the other two-thirds to an unsecured creditor by strictly complying with § 1325(b). The debtor would borrow two-thirds of the cost with an unsecured loan and finance one-third with a secured loan. Thereafter, he would rely on § 1325(b) within a Chapter 13 proceeding

14

to pay off the one-third secured loan and lower his "disposable income" to zero, allowing him to discharge the two-thirds unsecured loan. His intent all along would have been to acquire unencumbered ownership of the expensive painting for one-third of its cost. While the debtor would have complied strictly with § 1325(b) to do so, he would have acted in bad faith by taking advantage of § 1325(b) to his own benefit and at the calculated expense of his unsecured creditor. Yet, the Bankruptcy Code was designed for more benign conduct — to give a debtor making a good-faith effort to repay his debt a new start while at the same time protecting his creditors.

Nonetheless, Goddard maintains that the Ninth Circuit's decision in *Drummond v. Welsh* (*In re Welsh*), 711 F.3d 1120 (9th Cir. 2013), supports his position, and perhaps it does. *Welsh* held that a calculation made in compliance with § 1325(b) cannot be challenged because "in the BAPCPA, Congress chose to remove *from the bankruptcy court's discretion* the determination of what is or is not 'reasonably necessary.'" 711 F.3d at 1134 (emphasis added). And the *Welsh* court concluded further "that Congress's adoption of the BAPCPA forecloses a court's consideration of . . . a debtor's payments to secured creditors as part of the inquiry into good faith under 11 U.S.C. § 1325(a)." *Id*. at 1135. That conclusion might well support Goddard's suggestion that his calculations made in compliance with § 1325(b) must be accepted and not be subject to a good-faith review. But it does not support his argument that the correct calculation under § 1325(b) somehow immunizes his Chapter 13 plan from any examination under the good-faith standard, as required by § 1325(a)(3). Indeed, the *Welsh* opinion expressly recognized the distinction between the two inquiries. It pointed out that the good-faith inquiry required under

15

§ 1325(a)(3) "focuses on the debtor's motivation and forthrightness with the court in seeking relief," whereas the "disposable income requirement [under § 1325(b)], in contrast, focuses on the amount of funds that Congress expects a debtor to devote to paying off unsecured creditors. *These two inquiries are, indeed, separate and distinct.*" *Id*. at 1132 (emphasis added). While the *Welsh* court, to be sure, did, on occasion, blur the two concepts in discussion, that does not support an argument that compliance with § 1325(b) somehow immunizes a debtor from the good-faith inquiry required by § 1325(a)(3). We thus cannot agree with *Welsh*'s suggestion that a debtor's decision to retain luxury items "while paying relatively little to unsecured creditors," *id*. at 1133, is irrelevant to the broader good-faith inquiry. *See Mort Ranta*, 721 F.3d at 253 (observing that even after a debtor complies with § 1325(b), "[t]he debtor's plan . . . still must satisfy every other requirement for confirmation set forth in the Code," including that "the plan must have been proposed in good faith"). Indeed, at oral argument, Goddard conceded, as we believe he should have, that if a debtor has attempted to *abuse* or *manipulate* § 1325(b)'s test for disposable income, then that *can* be the basis for the bankruptcy court to find that the plan was not proposed in good faith, as required by § 1325(a)(3). *See* Oral Arg. 4:20–5:35.

Goddard also points for support to our decision in *Bledsoe v. Cook*, 70 F.4th 746 (4th Cir. 2023). But *Bledsoe* did not address the good-faith issue at all. Rather, it observed simply, and unremarkably for here, that Congress cabined a bankruptcy court's discretion when it provided the means test in § 1325(b) for determining what expenses were "reasonably necessary." 70 F.4th at 751 (citing *Welsh*, 711 F.3d at 1130, 1134).

16

At bottom, we conclude that while a debtor must comply with the means test in § 1325(b), he must also satisfy the requirement in § 1325(a)(3) that his Chapter 13 petition be proposed in good faith.

III

Having concluded that compliance with § 1325(b) does not immunize a debtor from the requirement of proposing a Chapter 13 plan in good faith, we conclude that in the circumstances presented here, the bankruptcy court did not clearly err in finding a lack of good faith. *See Cook v. Chapter 13 Trustee (In re Chapter 13 Trustee)*, __ F.4th __, No. 25-1048, 2026 WL 981209, at *5 (4th Cir. Apr. 13, 2026); *see also Trantham v. Tate*, 112 F.4th 223, 230 (4th Cir. 2024).

Addressing Goddard's pre-petition conduct, the bankruptcy court found that Goddard purchased the luxury vehicles — costing, in round numbers, $45,700, $61,800, and $57,700, respectively — over a short period of time, taking out both unsecured personal loans and secured loans in connection with their purchase. He then sought to use the bankruptcy procedure to obtain unencumbered ownership of the vehicles by using Trustee disbursements to pay the secured loans and discharging the personal loans. As the bankruptcy court stated:

> Based on the timing of the Debtor's personal loans, it appears that during the 21 months prior to filing his petition, the Debtor may have serviced the debts related to the Vehicles with the very loans he now seeks to discharge. Compliance with 11 U.S.C. § 1325(b)(1)(B) cannot and should not provide cover for such financial indiscretions.

17

The court also found that the vehicles that Goddard purchased were not necessary items, but luxury items, and, more importantly, that Goddard was attempting to use the Chapter 13 proceeding to obtain unencumbered ownership of the vehicles while ridding himself of more than $78,000 in unsecured debt. As the court again stated:

> The Debtor's testimony did not establish any necessity for all three Vehicles. If the Debtor had his way, the Trustee would disperse nearly $3,000 each month toward claims secured by vehicles that adorn the Debtor's driveway and allow for luxuries at the expense of his creditors.

Finally, the court found that in this manner, Goddard manipulated the purposes of the Bankruptcy Code to enhance his own position at the expense of his creditors. As the court stated:

> [T]he Debtor is seeking to improve his financial condition at the expense of his unsecured creditors. Under the terms of the Plan, the Debtor would emerge from bankruptcy with three unencumbered vehicles and the discharge of over $78,000 in unsecured debt. The Debtor conceded that he "probably could have" remained current on his unsecured debt obligations pre-petition if he had reduced his obligations related to the Vehicles.

Based on the record before the bankruptcy court, which well supports these findings, we conclude that the bankruptcy court did not clearly err in finding that Goddard's Chapter 13 plan was not proposed in good faith.

*     *     *

Accordingly, the district court's March 13, 2025 judgment, affirming the order of the bankruptcy court rejecting Goddard's Chapter 13 plan, is affirmed.

AFFIRMED

18